*NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ELIZABETH HUNTER and THEODORE R. KNUDSEN, | : : : | |
| Plaintiffs, | : | Civil Action No. 09-172 (FLW) |
| | : | |
| vs. | : : | |
| STERLING BANK, INC, <u>et al.</u>, | : : | **OPINION** |
| Defendants. | : : : | |

**<u>WOLFSON, United States District Judge</u>:**

Plaintiffs, Elizabeth Hunter and Theodore Knudsen (collectively, "Plaintiffs"), brought this suit against various mortgage companies, agents and brokers, including defendants Sterling Bank, Inc. ("Sterling") and Mark Ramos ("Ramos")(collectively, "Defendants"), essentially alleging that these defendants fraudulently induced Plaintiffs into obtaining a construction loan for the renovation of Plaintiffs' existing property.  In the present matter, defendants Sterling and Ramos move separately for summary judgment on the claims asserted against them.  For the reasons that follow, the Court grants both motions.

## BACKGROUND

The Court only recounts facts relevant to these motions and those facts are undisputed unless otherwise noted.  In April 2007, Plaintiffs purchased the real property located at 1296 Niihau Drive, Forked River, New Jersey (the "Property").  Plaintiffs intended to substantially renovate the existing structure and building a new two story house on the Property.  <u>See</u> Hunter Dep., 147:19-25.  After Plaintiffs purchased the Property, in September 2007, Knudsen contacted Ramos to inquire about

obtaining a construction loan in order to make the renovations to his home.  See Knudsen Dep., T119:18 to 122:22; Ramos Dep., T12:2-6 and 14:8-17.  Ramos was employed as a mortgage broker by defendant Allied Home Mortgage Capitol Corp. ("Allied"), a mortgage brokerage agency.  Allied conducted business in New Jersey through its agent, defendant Morgan Properties, LLC ("Morgan").

Ramos informed Plaintiffs that Allied could arrange for the end term financing, however, he advised Plaintiffs that Allied did not provide construction loans and Ramos would contact defendant Interstate Construction Funding, Inc. ("Interstate") to arrange for the construction loan.  Thereafter, in February 2008, with the assistance of Ramos, Plaintiffs secured approval from Countrywide Home Loans ("Countrywide") for the end term financing.  See Loan Approval dated February 13, 2008.

At around the same time, Interstate processed Plaintiffs' loan application and contacted Sterling to secure a short term construction loan for Plaintiffs.  Based on the loan application and documents provided by Plaintiffs, Sterling approved Plaintiffs for a short term construction loan. See Construction Loan Agreement dated February 26, 2008.  The principal amount for the construction loan was $550,000, and it was for a nine month term.  See Construction Note dated February 26, 2008.   At the closing of this loan, according to the terms of the loan agreement, $295,344.84 was utilized to pay in full Plaintiffs' pre-existing mortgage on the Property with Plaintiffs' former mortgagor, CitiMortgage.  See Payoff Statement dated March 1, 2008. Significantly, at the time the construction loan closed, Sterling and the mortgage brokers, including Ramos, were aware that Plaintiffs had been pre-approved by Countrywide for end term financing at the conclusion of the nine month construction loan term.  See Hunter Dep., 128:14-25.

Approximately two months after closing on the construction loan, Countrywide advised Plaintiffs that it had terminated its approval of their end term financing because, purportedly, the

loan product Plaintiffs applied for was no longer being offered.  <u>See</u> Action Letter dated April 22, 2008.  However, Hunter testified that she first learned of this fact in July 2008, and subsequently, contacted Sterling to inform Sterling regarding the termination of the end term financing by Countrywide.  <u>See</u> Hunter Dep., 128:14-25, 156:20-25, 157:1-15.

Sometime in the Spring of 2008, while construction was ongoing, Plaintiffs listed the Property for sale in the amount of $925,000.  <u>See</u> <u>Id.</u>,129:20-21; 131:7-19.  Hunter testified that she listed the Property for sale for personal reasons unrelated to the termination of the end term loan. In connection with the listing, Plaintiffs received an offer, in the amount of $710,000, for the purchase of the Property.  <u>See</u> <u>Id.</u>,131:23-25, 132:1-20.  However, Plaintiffs declined to accept this offer.

In the Fall of 2008, the construction of the Property was completed, and when Plaintiffs' loan to Sterling became due in December 2008, they defaulted on the construction loan.  <u>See</u> <u>Id.</u>,167:1-14. Thereafter, in February 2009, Plaintiffs initiated this action.  In the Amended Complaint, Plaintiffs assert a variety of contract, tort and statutory claims against Sterling and the mortgage brokers, including Ramos, involved in Plaintiffs' financing.  The Court will delineate these claims <u>infra</u>. In the instant matter, defendants Sterling and Ramos move separately for summary judgment.  In response, Plaintiffs have opposed Ramos' motion; however, Plaintiffs did not file any opposition papers to Sterling's motion.

## DISCUSSION

### I.      Standard of Review

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment

3

as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment,

4

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## II.    Defendant Sterling

As indicated earlier, Plaintiffs have not opposed Sterling's motion for summary judgment.  In fact, while Plaintiffs filed an opposition brief and supporting documents in response to defendant Ramos' motion for summary judgment, Plaintiffs have not filed any opposition papers to Sterling's motion.  Pursuant to L. Civ. R. 56.1, Plaintiffs must file a "responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents . . . ." L. Civ. R. 56.1(a).  Because Plaintiffs have not disputed any facts set fort by Sterling, the Court will deem those facts as undisputed.  See Id.  Moreover, Plaintiffs have not substantively opposed Sterling's legal arguments with respect to the claims asserted in the Amended Complaint against Sterling.  Consequently, due to Plaintiffs' non-compliance with the Rules and their failure to oppose Sterling's motion, the Court summarily dismisses Counts I, II, III, IV, VIII, IX and X of the Amended Complaint against defendant Sterling.

### III.    Defendant Ramos

#### 1.    New Jersey Consumer Fraud Act ("NJCFA")

To sustain a claim under the NJCFA, a plaintiff must prove three elements: (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) causal connection between the defendant's unlawful conduct and the plaintiffs' ascertainable loss. Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 577 (2009).  With respect to the first element, the NJCFA defines unlawful practice broadly, as including, but not limited to, unconscionable commercial practice, deception, fraud, false promise, false pretense, misrepresentation, or knowing concealment. N.J.SA. §56:8-2.  Specifically, an affirmative misrepresentation in the context of the fraudulent act is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Gennerai v. Weichert Co. Realtors, 288 N.J. Super. 504, 535 (App. Div. 1996) aff'd, 148 N.J. 582 (1997).

In this case, with respect to the first element of unlawful conduct, Plaintiffs claim that Ramos made false representations to Plaintiffs by stating that "Plaintiffs had been approved by Countrywide for a 30 year fix end loan in the amount of $591,000.00 at 8.125%.  This financing was intended to pay off the construction loan. Am. Compl., ¶ 19.  In that connection, Plaintiffs further claim that "Ramos knew or should have known plaintiffs had not qualified for an end loan with Countrywide prior to closing on the Sterling loan and failed to notify plaintiffs of same." Am. Compl., ¶21.  In support of this alleged affirmative misrepresentation,  Plaintiffs point solely to the deposition of Victor J. Bean, a former employer of Countrywide's branch manager in 2008 who oversaw the operations center which handled the mortgage broker application process.  Bean testified that with respect to Countrywide's loan approval letter sent to Plaintiffs in February 2008, it was an approval

with conditions, <u>see</u> Bean Dep. 28:21-25, and that if the conditions were not met, there would be no loan approval. <u>See Id.</u> 29:1-4. However, Bean also went on to say that he has never seen a loan approval without any conditions. <u>Id.</u> 63:24-25; 64:1-3. More importantly, Bean explained that Plaintiffs' end term financing from Countrywide is essentially a refinance of the construction loan, and as such, the loan approval in that situation would not have been final until the Property's renovations had been completed. <u>Id.</u> 64:4-10. Indeed, those conditions were clearly set forth in the Loan Approval Letter sent by Countrywide to Plaintiffs and Plaintiffs were aware of those terms. <u>See</u> Loan Approval dated February 18, 2008. Moreover, the same conditions were presented to Plaintiffs at the closing of the construction loan on February 26, 2008, and Plaintiffs acknowledged those conditions by initialing the approval sent by Countrywide. <u>See</u> Hunter Dep., 199:11-16.

Based on above testimony, the Court is satisfied that Plaintiffs have failed to raise any genuine issue of material fact regarding whether Ramos made any false representations when he advised Plaintiffs, at the time of the closing of the construction loan with Sterling, that Countrywide had approved Plaintiffs' end term financing, albeit with certain conditions. Indeed, the statements made by Ramos that Plaintiffs contend were false, were in fact true; that is, Plaintiffs were approved for a loan with Countrywide upon meeting certain conditions, one of which was the completion of the renovation of the Property. Further, Ramos could not have advised Plaintiffs that their loan with Countrywide was cancelled at the time of the closing of the construction loan because based on uncontroverted evidence, Countrywide did not notify Plaintiffs of the cancellation until April 2008 - approximately two months after the closing of Sterling construction loan. Accordingly, there is no evidence demonstrating that Ramos engaged in any unlawful conduct under the NJCFA.

Likewise, Plaintiffs fail to raise any genuine issue of material fact as to the third element of

their NJCFA claim - causal connection between the defendant's unlawful conduct and the plaintiffs' ascertainable loss.  As explained by Bean and acknowledged by Plaintiffs, Countrywide's decision not to issue the end term financing was because Countrywide, in April 2008, no longer supported the type of loan that was approved for Plaintiffs.  See Bean Dep., 40:19-26; 41:1-13; Hunter Dep., 209:1-11.  As such, Ramos had no control in the decisions made by Countrywide.  In that regard, clearly, the damages that Plaintiffs allegedly suffered were not causally related in any way to any alleged misrepresentations or omissions made by Ramos.

The Court finds that no genuine issue of material fact exists to preclude summary judgment on this claim, and thus, Plaintiffs' NJCFA claim asserted against Ramos is dismissed.

### 2.    Common Law Fraud and Negligent Misrepresentation

In order to be successful on a fraud claim, "a plaintiff must prove: (1) material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; and (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Banco Popular N.A. v. Gandi, 184 N.J. 161, 172-73 (2005).  Importantly, "[m]isrepresentations and reliance are the hallmark of any fraud claim, and a fraud cause of action fails without them." Id. at 174.  The elements of fraud must be proved by clear and convincing evidence.  Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super 388, 395 (App. Div. 1989).

In New Jersey, "negligent misrepresentation is . . . [a]n incorrect statement, negligently made and justifiably relied on, [and] may be the basis for recovery of damages for economic loss . . . sustained as a consequence of that reliance."  Kaufman v. I-Stat Corp., 165 N.J. 94, 109 (2000)(citing H. Rosenblum, Inc. v. Adler, 93 N.J. 3234 (1983)).  Indeed, a claim for negligent

8

misrepresentation is "essentially the same claim as fraud, except that it requires a scienter only of negligence." McClellan v. Feit, 376 N.J. Super. 305, 313, 870 A.2d 644 (App. Div. 2005); Beals v. Bank of Am., N.A., No. 10-5427, 2011 U.S. Dist. LEXIS 128376, at *37 (D.N.J. Nov. 4, 2011).

Similar to their NJCFA claim, Plaintiffs argue that Ramos has committed a fraud by "using fraudulent and/or material misrepresentations and nondisclosure" to induce Plaintiffs to "enter into a loan transaction with Sterling with the false belief that they had a secured end loan to repay Sterling upon completion of the home improvement project." Am. Compl., ¶ 40. Again, in support of this claim, Plaintiffs rely on the testimony of Bean that Countrywide's loan approval was not final until certain conditions were met. In that regard, for the same reasons explained by the Court above, Plaintiffs have not provided any evidence to demonstrate that Ramos made any material misrepresentations or omissions. This failure is fatal to their common law fraud claim, and accordingly, the Court dismisses this claim against Ramos.

Likewise, with respect to their negligent misrepresentation claim, Plaintiffs maintain that Ramos made "false, misleading or materially incomplete misrepresentations to the plaintiffs." Am. Compl., ¶ 72. To support this claim, Plaintiffs again rely on the testimony of Bean that the loan approval letter is not a final approval of an end loan, and that Ramos negligently misrepresented that fact. For the same reasons why Plaintiffs fail to sustain a fraud claim, their negligent misrepresentation claim must be dismissed for failure to show that Ramos' representation regarding Plaintiffs' loan approval from Countrywide was false or otherwise negligent.

### 3.    Breach of the Covenant of Good Faith and Fair Dealing

A covenant of good faith and fair dealing is implied in every contract in New Jersey. Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997) (citing numerous cases of this Court

holding covenant implied in every contract).  Under such a covenant, "'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'"  Bak-A-Lum Corp. v. Alcoa Bldg. Prod., 69 N.J. 123, 129 (1976) (quoting Ass'n Group Life, Inc. v. Catholic War Vets. of U.S., 61 N.J. 150, 153 (1972)).  "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term."  Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001) (citations omitted).  "[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive."  Wilson, 168 N.J. 236 at 251; Wade v. Kessler Inst., 172 N.J. 327, 341 (2002).  In other words, proof of "bad motive or intention" is vital to an action for breach of the covenant of good faith and fair dealing.  Id.

In Count Four of the Amended Complaint, Plaintiffs allege that Ramos breached his duty of good faith and fair dealing by acting "with bad motives or intentions and contrary to the reasonable expectations of plaintiffs."  Am. Compl., ¶¶ 46-47.  However, while Count Four is captioned as "Breach of Contract," Plaintiffs have not specifically alleged any contract that Ramos purportedly breached.  Logically, a violation of the implied covenant of good faith and fair dealing cannot be maintained when there is no contract between the parties. Attempting to remedy such a deficiency, in their opposition, Plaintiffs only state that "disputed facts exist regarding Defendant Ramos' breach of good faith and fair dealing" because they have set forth the existence of a contract in Count Four. Because Plaintiffs failed to allege a contractual relationship between Ramos and themselves, the Court can summarily dismiss this claim against Ramos.

Nevertheless, even if there were a contract between Ramos and Plaintiffs, Plaintiffs have

10

failed to show any bad motive or intention on the part of Ramos.  According to the testimony of Plaintiffs, Ramos assisted them in obtaining an end loan with Countrywide, as well as a construction loan with Sterling.  Indeed, Ramos' efforts were successful.  To the extent that Plaintiffs premise a showing of bad motive related to Ramos' alleged misrepresentations or omissions, the Court has already found that there were  no such false representations or nondisclosures.  Other than these allegations, Plaintiffs have not pointed to any other evidence to substantiate their claim in this context.  As such, the Court finds that summary judgment is appropriate.

### 4.    Breach of Fiduciary Duty

The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship. F.G. v. MacDonell, 150 N.J. 550, 563-64 (1997) (citing Restatement (Second) of Torts § 874 cmt. a (1979)); see In re Stroming's Will, 12 N.J. Super. 217, 224 (App.Div.), certif. denied, 8 N.J. 319 (1951) (stating essentials of confidential relationship "are a reposed confidence and the dominant and controlling position of the beneficiary of the transaction"); Blake v. Brennan, 1 N.J. Super. 446, 453 (Ch. Div.1948) (describing "the test [as] whether the relationship between the parties were of such a character of trust and confidence as to render it reasonably certain that the one party occupied a dominant position over the other"); Bogert, Trusts and Trustees 2d § 481 (1978) (stating "[t]he exact limits of the term 'fiduciary relation' are impossible of statement. Depending upon the circumstances of the particular case or transaction, certain business, public or social relationships may or may not create or involve a fiduciary character."). "The fiduciary's obligations to the dependent party include a duty of loyalty and a duty

11

to exercise reasonable skill and care." F.G., 150 N.J. at 564 (citing Restatement (Second) of Trusts §§ 170, 174 (1959). Accordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship. Id. (citing Restatement (Second) of Torts § 874 (1979)).

Here, Plaintiffs claim that Ramos breached his fiduciary duty by "using [his] influences to falsely assure Plaintiffs had an approved end loan to repay Sterling upon completion of the home improvement project." Am. Compl., ¶ 52.  With regard to such an allegation, there are no facts in the record before the Court that Ramos unduly exerted any influence to persuade Countrywide, or anyone else, to approve Plaintiffs' end term financing.  In fact, that determination was not in Ramos' control as a mortgage broker.  Moreover, Ramos did not falsely represent or assure Plaintiffs that they had an end loan in place when the construction loan closed because, as this Court found earlier, at the time of the closing of the Sterling loan, Plaintiffs indeed had an approved end loan with certain conditions to be met before final approval could be provided by Countrywide.  Plaintiffs were made aware of those terms and conditions by way of the Loan Approval Letter and by certain documents, which Plaintiffs had to initial, at the time the construction loan closed.  During the loan process, Plaintiffs admit that they were never advised by Ramos or Allied that final approval of the end loan with Countrywide was guaranteed.  See Hunter Dep., 202:16-203:6.  In fact, upon learning that Countrywide had withdrawn the loan approval, Ramos contacted Plaintiffs to inquire whether he could assist Plaintiffs in obtaining replacement financing.  See Ramos Dep., 68:11-17; 71:7-23. Under this undisputed factual scenario, Plaintiffs have failed to make a showing of a "bad motive" on the part of Ramos, and based on the lack of any evidence in that regard, summary judgment is appropriate.

5.      **Promissory Estoppel**

Plaintiffs contends that they are entitled to recovery under the doctrine of promissory estoppel because they suffered damages by relying on Ramos' knowingly false "promise to [Plaintiffs] that they had an approved end loan to repay Sterling upon completion of the home improvement project." Am. Compl., ¶ 55. The elements of promissory estoppel are: 1) a clear and definite promise, 2) made with the expectation that the promisee will rely upon it, 3) reasonable reliance upon the promise, 4) which results in definite and substantial detriment. East Orange Bd. of Educ. v. New Jersey Schools Const. Corp., 405 N.J. Super. 132, 148 (App. Div. 2009).

Here, Plaintiffs, through the testimony of Bean, reiterate their earlier contention that the loan approval provided by Countrywide was not a final approval, and as such, Ramos falsely promised Plaintiffs that Plaintiffs' end term financing was approved. As the Court has already noted throughout this Opinion, Ramos' representation that Countrywide had approved Plaintiffs loan was not false, and further, according to plaintiff Hunter's own testimony, Ramos never made any promise that the final approval of the end loan would be guaranteed. See Hunter Dep., 202:16-203:6. To the contrary, there is no dispute that Ramos expressly advised Plaintiffs that the end loan documents would have to be updated near the completion of the renovation of the Property, and that, according to the terms of the approval, Plaintiffs should ensure that they pay all credit cards on time and not overspend in order to prevent a negative change to their financial position. See Ramos Dep., 85:14-87:6 and 140:3-7. Because there are no facts in dispute that Ramos never made any promise to Plaintiffs, false or otherwise, that Plaintiffs had a guaranteed end loan with Countrywide, Plaintiffs have failed to sufficiently establish the first element of promissory estoppel; accordingly, Count six is summarily dismissed.

13

6.      **Unconscionability**

An affirmative defense of unconscionability can be sustained when a party shows that the contract terms are manifestly unfair or oppressive and are dictated by a dominant party. Howard v. Diolosa, 241 N.J. Super 222, 230 (citing Kuzmiak v. Brookchester, 33 N.J.Super. 575 (App. Div.1955)). In that regard, a party must demonstrate unconscionability by "showing some overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms." Id. (citing Rotwein v. General Accident Group & Cas. Co., 103 N.J. Super. 406, 417-418 (Law Div.1968)).

However, as a matter of law, the doctrine of unconscionability generally "acts as a shield against enforcement of an unreasonable contract and not a sword on a claim for affirmative relief." Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super 555, 566 n.14 (Ch. Div. 2002). Therefore, it can not be brought as an affirmative claim or cause of action. See Lind v. New Hope Prop., LLC, No. 09-3757, 2010 U.S. Dist. LEXIS 36672, at *25-26 (D.N.J. Apr. 13, 2010); Alboyacian v. BP Prods. N. Am., No. 09-5143, 2011 U.S. Dist. LEXIS 134453, at *17 (D.N.J. Nov. 21, 2011)(unconscionability is not a cause of action that a plaintiff may bring in the affirmative); see also Calhabeu v. Rivera, 217 N.J. Super. 552, 558 (Law Div. 1987)(court held "'unconscionability' to be a matter of defense" and "[t]raditionally, it is raised by defendant rather than plaintiff.").

Here, it appears that while Ramos moved to dismiss this Count, the Amended Complaint clearly states that this Count is only asserted against defendants Allied, Interstate and Morgan Properties. However, to the extent that this Count is asserted against Ramos, Plaintiffs may not affirmatively bring a claim of unconscionability against him.

14

7.        **Negligence**

To state a claim for negligence under New Jersey law, a plaintiff must demonstrate: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) injury or harm to the plaintiff; and (4) proximate cause.  Anderson v. Sammy Redd and Associates, 278 N.J. Super 50, 56 (App. Div. 1995).

Here, to sustain a claim for negligence, Plaintiffs maintain that as their agent, Ramos had "a duty to advise and inform them that the approval for the end loan was not a loan approval and that if [he] had told them prior to their closing of the construction loan, they would then have the choice of either continuing with the closing or not [close] at all."  Plaintiffs' Opp., p. 5.  Accordingly, Plaintiffs reason, because Ramos had negligently performed his duties – i.e., falsely informing Plaintiffs that Countrywide had provided Plaintiffs with a definitive loan approval – they are entitled to relief.  The Court disagrees.

Based on the testimony and other evidence introduced by the parties on this motion, Plaintiffs have failed to demonstrate that Ramos breached his duty.  As the Court has found, Ramos' representation that Countrywide had approved Plaintiffs' end loan with certain conditions was not false and was not negligently made because it is undisputed that Countrywide provided Plaintiffs with a loan approval.  Plaintiffs were certainly aware that while this approval was sufficient to procure a construction loan with Sterling, the conditions provided in the Loan Approval Letter must be met before the closing of the end loan.  Absent any contrary evidence, the Court finds that Plaintiffs have failed to show that Ramos was negligent in his duties as a broker, and therefore, this claim is dismissed.

15

8.      **Civil Conspiracy**

Because Plaintiffs cannot sustain their claim for common law fraud, which is the sole basis for their conspiracy claim, this claim must be dismissed. <u>See</u> <u>Farris v. County of Camden</u>, 61 F. Supp. 2d 307, 326 (D.N.J. 1999) (civil conspiracy is not an independent cause of action but rather a liability expanding mechanism which exists only if the plaintiff can prove the underlying independent wrong); <u>Board of Educ. Asbury Park v. Hoek</u>, 38 N.J. 213, 238 (1962).

## CONCLUSION

The Court finds that based upon uncontroverted evidence in the record, Plaintiffs fail to show that Ramos made any fraudulent or negligent misrepresentations or nondisclosures in connection with Plaintiffs' end term financing with Countrywide.  Accordingly, defendant Ramos' motion for summary judgment is GRANTED.  Based upon Plaintiffs' failure to oppose or otherwise respond to Sterling's motion for summary judgment, Sterling's motion is likewise GRANTED.

DATED: November 28, 2011                        /s/ Freda L. Wolfson
                                                The Honorable Freda L. Wolfson
                                                United States District Judge

16